UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CREDIT ACCEPTANCE CORPORATION, | ) |
| *Appellant*, | ) |
| v. | ) 1:19-cv-1802-JMS-TAB |
| DENNIS THOMPSON, SR., | ) |
| *Appellee*. | ) |

## ORDER ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT

Dennis Thompson, Sr. initiated a proceeding in the United States Bankruptcy Court for the Southern District of Indiana by voluntarily filing a petition for relief under Chapter 13 of the United States Bankruptcy Code. [Filing No. 5 at 71-72]. Credit Acceptance Corporation ("Credit Acceptance") filed a Proof of Claim, asserting a claim in the amount of $11,887.20 secured by a 2013 Hyundai Sonata. [Filing No. 5 at 72.] Mr. Thompson proposed a bankruptcy plan, to which Credit Acceptance objected, arguing that the plan erroneously deferred its monthly payments to provide for the accelerated payment of fees to Mr. Thompson's attorney. The Bankruptcy Court overruled the objection and confirmed the plan, and Credit Acceptance appealed to this Court.

### I.
### STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a), this Court has jurisdiction to hear appeals from final judgments, orders, and decrees of Bankruptcy Courts. An order confirming a proposed plan constitutes a final judgment. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010). When reviewing a Bankruptcy Court's decision, questions of law—such as questions of statutory interpretation—are reviewed *de novo*. *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 776 (7th Cir. 2013).

1

## II.
### BACKGROUND

The following facts are largely taken from the Bankruptcy Court's April 8, 2019 order, [Filing No. 5 at 70-76], and are undisputed by the parties. Where appropriate, additional details or references to other documents—which also are not disputed by the parties—are included.

On September 12, 2018, Mr. Thompson filed his first proposed Chapter 13 plan ("the Plan"), which provided that, prior to confirmation, the trustee would pay adequate protection payments to each secured creditor in the amount of 1% of the secured claim. [Filing No. 5 at 18; Filing No. 5 at 72.] The Plan also listed an administrative claim for attorney's fees in the amount of $3,900. [Filing No. 5 at 18.] Relevant here, the Plan also provided that equal monthly amount ("EMA") payments to secured creditors were "to begin approximately in month 21 of the plan after administrative claims are paid in full." [Filing No. 5 at 20; Filing No. 5 at 72.] Credit Acceptance's claim was the only secured claim, while Mr. Thompson's attorney's fee was the only claim for administrative expenses. [Filing No. 5 at 72.]

Credit acceptance objected to the Plan, arguing in pertinent part that the Plan violated 11 U.S.C. § 1325(a)(5)(B)(iii)(I) ("the equal payment provision") because the EMA payments did not begin upon confirmation of the Plan, but instead would be deferred until Mr. Thompson's attorney's fees were paid in full, resulting in unequal payments over the course of the Plan. [Filing No. 5 at 21; Filing No. 5 at 73]. After the parties briefed the issue, the Bankruptcy Court overruled Credit Acceptance's objection and ordered that an amended plan be filed so that a monetary value for the EMA payments could be specified. [Filing No. 5 at 72.] An amended plan ("Amended Plan") was later filed, containing the same provisions as the original Plan and specifying that the EMA payments to Credit Acceptance would be in the amount of $285. [Filing No. 5 at 63-67;

Filing No. 5 at 72.] Credit Acceptance again objected, asserting a violation of the equal payment provision. [Filing No. 5 at 68.]

The Bankruptcy Court overruled the objection, applying the reasoning from an earlier order in the case of *In re Muhammad*, Case No. 05-33234-FJO-13, doc. 55 (Bankr. S.D. Ind. July 25, 2006), and concluding that: (1) the Amended Plan correctly provided that adequate protection payments under 11 U.S.C. § 1326(a)(1)(C) were required to be paid to Credit Acceptance from 30 days after the filing of the case until the EMA payments began; (2) the EMA payments were not required to begin upon confirmation; and (3) administrative claims, including attorney's fees, could be paid prior to the commencement of EMA payments. [Filing No. 5 at 74-76.] The Bankruptcy Court noted that, since *Muhammad*, "other bankruptcy courts in the 7th Circuit have addressed this issue and come down on both sides," but nonetheless concluded that the Amended Plan did not violate the equal payment provision. [Filing No. 5 at 74-76.] Thereafter, the Bankruptcy Court issued a separate order confirming the Amended Plan, [Filing No. 5 at 79-82], and Credit Acceptance appealed, [Filing No. 1].

## III.
### DISCUSSION

Credit Acceptance argues that the Bankruptcy Court erred in confirming the Amended Plan because it does not comply with the statutory requirement that all payments to secured creditors be in equal amounts beginning at confirmation. [Filing No. 8 at 23-27.] Furthermore, it argues that nothing in the Bankruptcy Code requires that administrative claims be paid prior to claims by secured creditors, and instead the statutory language permits both types of claims to be paid simultaneously. [Filing No. 8 at 27-29.]

Mr. Thompson responds that the Amended Plan was properly approved because, consistent with longstanding practice, the Bankruptcy Code does indeed require full payment of attorney's

3

fees before EMA payments to secured creditors. [Filing No. 9 at 11-15.] He also argues that EMA payments are not required to be made over the entire life of the plan, but instead creditors can receive adequate protection payments under § 1326(a)(1)(C) until their EMA payments commence, regardless of whether the adequate protection payments are equal in amount to the EMA payments. [Filing No. 9 at 17-20.]

In reply, Credit Acceptance maintains that the proper interpretation of the Bankruptcy Code is that EMA payments must be made to secured creditors beginning when the plan is confirmed, and because Mr. Thompson's plan did not so provide, it should not have been confirmed. [Filing No. 11 at 7-10.]

"The language of section 1325(a) sets forth the specific and limited universe of requirements that must be met by a debtor in his or her proposed Chapter 13 plan." *Petro v. Mishler*, 276 F.3d 375, 378 (7th Cir. 2002). If those requirements are met, the plan shall be approved, unless the trustee objects. *Id.* Relevant here, the equal payment provision, which applies "with respect to each allowed secured claim provided for by the plan," requires that:

> (iii) if--
>
> > (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
> >
> > (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; . . .

11 U.S.C. § 1325(a)(5)(B)(iii)(I)-(II).

In addition, the Code provides that, unless the Bankruptcy Court orders otherwise, the debtor shall begin making payments to certain secured creditors within 30 days after the filing of the plan, in an amount that provides adequate protection to the creditor. 11 U.S.C. § 1326(a)(1)(C). Payments under this section will be referred to as "adequate protection payments."

4

Furthermore, "[b]efore or at the time of each payment to creditors under the plan, there shall be paid . . . any unpaid claim of the kind specified in section 507(a)(2) . . . ." 11 U.S.C. § 1326(b)(1). Section 507(a)(2) references administrative expenses allowed under § 503(b), which in turn provides for the payment of reasonable attorney's fees. 11 U.S.C. § 507(a)(2); 11 U.S.C. § 503(b)(4).

The question presented in this appeal is whether these provisions, taken together, permitted the approval of the Amended Plan providing for the EMA payments to Credit Acceptance—which were higher than the adequate protection payments—to begin 21 months into the plan, after Mr. Thompson's attorney has been paid in full. As the parties and the Bankruptcy Court note, Bankruptcy Courts within this Circuit and across the country are split as to how to answer this question of statutory interpretation, and it does not appear that any higher court has resolved this issue. The Court will begin with a brief overview of three prominent approaches that Bankruptcy Courts have taken in answering this question. *See e.g.*, *In re Miceli*, 587 B.R. 492, 496 (Bankr. N.D. Ill. 2018) (discussing the three approaches and collecting cases).

The first approach originated with *In re DeSardi*, in which the Bankruptcy Court for the Southern District of Texas concluded that "the equal payment provision requires that payments be level once they begin and terminate once the lender is fully paid," but not that payments be equal throughout the entire life of the plan beginning at confirmation. 340 B.R. 790, 806 (Bankr. S.D. Tex. 2006). In doing so, the court noted that § 1325(a)(5)(B)(iii) does not explicitly state that payments must be equal as of the effective date of the plan, which is in direct contrast to other provisions—such as § 1325(a)(5)(B)(ii)—which do specifically reference confirmation or "the effective date of the plan." *DeSardi*, 340 B.R. at 805. The court went on to conclude that "adequate protection payments [mandated by § 1326(a)(1)(C)] are not meant to be considered

5

when fulfilling the requirements of the equal payment provision." *Id.* Accordingly, a creditor may continue to receive adequate protection payments after confirmation and later begin receiving EMA payments, regardless of whether the adequate protection and EMA payments are equal in amount. *Id.* at 806-08. In addition, the court pointed out that its interpretation was consistent with the purpose of the provision, which was to ensure that secured creditors were protected from abusive debtor tactics and against the depreciation of their collateral. *Id.* at 809-10.

As to the payment of attorney's fees, the *DeSardi* court concluded that the wording of § 1326(b)(1)—stating that "there shall be paid any unpaid claim" for administrative expenses "before or at the time of each payment to creditors under the plan"—means that attorney's fees must be paid in full prior to or at the same time as the commencement of EMA payments to creditors. *Id.* at 808-09. In other words, while it would be permissible for the trustee to make a payment to a creditor at the same time that he or she paid off the full claim for attorney's fees, the trustee could not make partial payments to the attorney and the creditor simultaneously. *Id.* The court noted that this interpretation was consistent with legislative history, which reflected a congressional understanding that the Bankruptcy Code would give priority to administrative expenses. *Id.* (citing H.R. Rep. No. 95-595, 430 (1978), U.S. Code Cong & Admin. News 1978, pp. 5963, 6385–6387; S. Rep. No. 95-989, 142 (1978), U.S. Code Cong & Admin. News 1978, pp. 5787, 5928).

A second approach is based on *In re Erwin*, in which the Bankruptcy Court for the Central District of Illinois concluded that a trustee may pay the debtor's attorney's fees on an accelerated basis, before making payments to secured creditors. 376 B.R. 897, 899 (Bankr. C.D. Ill. 2007). First, the court concluded that "the accelerated payment of debtors' attorney fees was not intended to be precluded by the equal payment provision," and was expressly authorized by § 1326(b)(1).

6

*Erwin*, 376 B.R. at 901. Second, the court concluded that, because the trustee has discretion in administering the plan, the equal payment provision requires that the debtor pay equal monthly amounts to the trustee, not that the trustee pay equal amounts to any particular creditor. *Id.* at 902.

The third approach arrives at the opposite result, with various courts concluding that the equal payment provision requires that each payment made to a secured creditor after confirmation must be in an equal amount. *See, e.g.*, *Miceli*, 587 B.R. at 496. Under this approach, courts reason that "there is no basis in the statute for finding that § 1326(b)(1) trumps the right of an objecting secured creditor to equal payments under § 1325(a)(5)(B)," because attorney's fees and secured claims can be paid simultaneously. *In re Williams*, 583 B.R. 453, 457 (Bankr. N.D. Ill. 2018). Further, because § 1325(a)(5)(B)(iii) has its own adequate protection requirement, which must be satisfied along with the equal amount requirement, a debtor "cannot merely continue pre-confirmation adequate protection [payments] under § 1326(a)(1)(C) as post-confirmation payments under § 1325(a)(5)(B)(iii), if doing so will lead to unequal payments on a secured claim." *Id.* *See also In re Romero*, 539 B.R. 557, 560 (Bankr. E.D. Wis. 2015) (concluding that a plan could not be confirmed where it provided that the creditor was to receive lower monthly payments until the debtor's attorney's fees were paid in full, and higher payments thereafter, because such arrangement violated the equal payment provision).

Here, the Bankruptcy Court below relied on its previous decision in *Muhammad*, which utilized the *DeSardi* approach. *See* Case No. 05-33234-FJO-13, doc. 55; [Filing No. 5 at 32-42 (*Muhammad* decision)]. This Court agrees that the *DeSardi* approach is the correct one.

"[I]nterpretation of the Bankruptcy Code starts where all [statutory interpretation] inquiries must begin: with the language of the statute itself." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018) (internal quotation marks and citation omitted). The first step is to

7

determine "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *River Rd. Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 648-49 (7th Cir. 2011), *aff'd sub nom. RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) (internal quotation marks omitted) (*quoting Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "When interpreting statutory language, the meaning attributed to a phrase 'depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.'" *Id.* (quoting *Kasten v. Saint–Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011)).

The plain language of § 1326(b)(1) states that "any unpaid claim" for administrative expenses—which, after tracing through the references to other provisions, includes attorney's fees—"shall be paid" either "[b]efore or at the time of each payment to creditors under the plan." 11 U.S.C. § 1326(b)(1). Several phrases within this provision are significant. First, because the referenced payments to creditors are those "under the plan," it can be assumed that the reference is to EMA payments provided for by the confirmed plan. This is because adequate protection payments under § 1326(a)(1)(C) are independent of the plan, as they can begin before any plan is approved and do not necessarily have to be provided for in the plan itself. *See* 11 U.S.C. § 1326(a)(1)(C); *In re Housley*, 2018 WL 1005285, at *2 (Bankr. C.D. Ill. 2018) ("Nothing in § 1326—or any other Code section—requires that pre-confirmation adequate protection payments be set forth in a proposed plan."). Accordingly, "any unpaid claim" for attorney's fees "shall be paid" either "before or at the time of each" EMA payment required by the confirmed plan.

Second, the Court is persuaded by the *DeSardi* court's reasoning that the most natural reading of the phrases "any unpaid claim" and "shall be paid" is that any outstanding balance owed must be satisfied in full. *See also In re Harris*, 304 B.R. 751, 757 (Bankr. E.D. Mich. 2004) ("The

8

statute does not say that "[b]efore or at the time of each payment to creditors under the plan, there shall be paid—. . . *part of* any unpaid [administrative] claim . . . ." (emphasis and alterations in original)).

Third, and relatedly, because the statute references "each" EMA payment, it follows that this full payment must occur "before or at the time of" *every* EMA payment, and, therefore, "before or at the time of" *any* EMA payment. If the trustee were allowed, as Credit Acceptance suggests, to pay EMA payments and payments to Mr. Thompson's attorney simultaneously, the plain language of § 1326(b) would not be satisfied. Specifically, if the attorney and Credit Acceptance were each given monthly payments toward their claims, then during the first month of the plan, the trustee would distribute a payment to the attorney and a payment to Credit Acceptance, and both would have remaining balances on their claims. In that case, a portion of the attorney's "unpaid claim" would be outstanding, and, therefore, would not have been "paid" either "before or at the time of" the payment to Credit Acceptance. The attorney's fees and Credit Acceptance's EMA payment could permissibly be paid at the same time only if the first payment to the attorney satisfied the full claim. In that scenario, the attorney's "unpaid claim" would "be paid" in full "at the time of" the first EMA payment to Credit Acceptance. *See Harris*, 304 B.R. at 757 (concluding that a partial payment to the attorney at the same time as a payment to the creditor "would not satisfy § 1326(b)(1) because there would still remain an unpaid administrative claim"). Accordingly, § 1326(b)(1) requires that an administrative claim for the debtor's attorney's fees be paid in full before or at the same time as EMA payments to secured creditors begin.

Such interpretation is not inconsistent with the requirements of the equal payment provision. Notably, the equal payment provision is silent as to the time at which EMA payments are to begin or end, and merely states that, if "property to be distributed pursuant to this subsection"

9

is to be distributed in the form of periodic payments, then the payments must be in equal amount. "[T]his subsection" means subsection (a)(5), which discusses payments to be made to secured creditors under the plan. *See* 11 U.S.C. § 1325(a)(5) ("(5) with respect to each allowed secured claim provided for by the plan-- . . ."); *In matter Enders*, 2015 WL 5772199, at *2 (Bankr. E.D. Wis. 2015) ("The subsection addresses the plan's treatment of allowed secured claims. The periodic payments can only mean payments provided for in the plan to pay creditors' secured claims."). Accordingly, similar to the analysis of the fee provision above, § 1325(a)(5)(B)(iii)(I) must apply to property distributed under the confirmed plan, because adequate protection payments under § 1326(a)(1)(C) are separate. *See* 11 U.S.C. § 1326(a)(1)(C); *Housley*, 2018 WL 1005285, at *2. Thus, there is a reasonable basis to distinguish between adequate protection payments and EMA payments, such that "adequate protection payments are not meant to be considered when fulfilling the requirements of the equal payment provision." *DeSardi*, 340 B.R. at 806. In other words, while the equal payment provision requires that EMA payments must be equal to each other, such payments need not be equal to the § 1326(a)(1)(C) adequate protection payments paid to the creditor until the EMA payments begin.

Reading in a requirement that EMA payments begin at the time of confirmation would be inconsistent with the above interpretation of § 1326(b)(1). If a debtor were required to both commence EMA payments upon confirmation and pay his attorney's fees in full before or at the time of the first EMA payment, then the attorney's fee would effectively be due in full upon confirmation. Because it is unlikely that a bankrupt debtor would be able to pay the entire attorney fee and all of the first EMA payments to secured creditors at the same time, interpreting the equal payment provision to require that EMA payments begin at confirmation would be inconsistent with the attorney's fees provision and would create an absurd and infeasible result, both of which

10

should be avoided if possible. *See Roberts v. Fed. Hous. Fin. Agency*, 889 F.3d 397, 403 (7th Cir. 2018) (stating that, in interpreting a statute, courts should "avoid a reading that would render its provisions inconsistent or redundant"); *Wittman v. Koenig*, 831 F.3d 416, 422 (7th Cir. 2016) (explaining that statutory language should be interpreted "to avoid absurd or unreasonable results"). In any event—and, perhaps, more importantly—a court generally should not read into a statute requirements that are not there. *See Iselin v. United States*, 270 U.S. 245, 251 (1926) ("To supply omissions transcends the judicial function.").

Furthermore, the above interpretation of the equal payment provision is consistent with its purpose of protecting secured creditors' interests against depreciation in the value of their collateral during the bankruptcy proceeding. Prior to the amendments to the Bankruptcy Code that included the equal payment provision, it was not uncommon for Chapter 13 plans to provide for backloaded payments to secured creditors, such as balloon payments or graduated step-up payment schedules. *See Erwin*, 376 B.R. at 901; *DeSardi*, 340 B.R. at 809-10. Such plans were viewed as unfair or abusive to secured creditors because the value of the collateral was depreciating while they were not being paid, and thus they were exposed to the risk that, if the plan failed, they would be required to repossess collateral that was now worth less than the value of the claim. *See Erwin*, 376 B.R. at 901; *DeSardi*, 340 B.R. at 809-10. In response to these concerns, the equal payment provision was added to the Code, along with its companion provision requiring that all EMA payments be high enough to provide creditors with adequate protection. *See* 11 U.S.C. § 1325(a)(5)(B)(iii)(I)-(II); *Erwin*, 376 B.R. at 901. However, if secured creditors are adequately protected throughout the duration of the plan—first by § 1326(a)(1)(C) adequate protection payments and then by sufficiently high EMA payments—these abusive tactics are not a concern, regardless of whether the higher EMA payments commence upon confirmation or after the

11

attorney is paid in full.  *See In re Marks*, 394 B.R. 198, 204 (Bankr. N.D. Ill. 2008) ("[T]he dangers of abuse that precipitated the amendments to § 1325 are not inherent under this interpretation of the statute. Since [the creditor] is receiving adequate protection payments in the amount of depreciation while the administrative claims are covered, it will not be left holding the bag for any loss in value of the collateral if the plan should later fail or become converted to a chapter 7 case.").

Finally, as some courts have recognized, the interpretation of these provisions that allows priority payment to attorneys is consistent with the policy of incentivizing attorneys to participate in bankruptcy proceedings.  As the Bankruptcy Court for the Southern District of Indiana pointed out in *Muhammad*:

> There is also a very practical reason for paying attorney fees first.  If attorneys are not fairly and promptly paid for their services there is a substantial risk that many of the bankruptcy bar, which is comprised of a number of experienced attorneys, will not continue to practice in the bankruptcy arena.  Such a result could be disastrous for debtors and the Court. . . . Chapter 13's are no longer a simple proceeding and are rife with pitfalls for unwary debtors.  An experienced bankruptcy bar is essential to the operation of a smooth and fair bankruptcy process.

*See Muhammad*, Case No. 05-33234-FJO-13, doc. 55 at 8; [Filing No. 5 at 39].

Accordingly, Mr. Thompson's Amended Plan—which provided for adequate protection payments to Credit Acceptance until 21 months into the life of the plan and higher EMA payments thereafter—did not violate the equal payment provision.  Thus, the Bankruptcy Court did not err in approving the Amended Plan.

## IV.
### CONCLUSION

Based on the foregoing, the Bankruptcy Court's April 8, 2019 order approving the Amended Plan is **AFFIRMED**.  Final judgment shall issue accordingly.

Date: 10/2/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**